UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:20-cv-00247-JPH-MG |
| WEXFORD OF INDIANA, LLC, RYAN SCHNARR, | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At all times relevant to this case, Robert Johnson was in the custody of the Indiana Department of Correction (IDOC) and housed at Putnamville Correctional Facility. Mr. Johnson alleges that defendants Ryan Schnarr and Wexford of Indiana, LLC, failed to properly treat his foot neuropathy in violation of the Eighth Amendment and Indiana tort law. Because no reasonable jury could find based on the undisputed facts that either defendant violated Mr. Johnson's Eighth Amendment rights, the defendants are entitled to summary judgment on those claims. And with all federal claims in the case resolved, the Court declines to exercise supplemental jurisdiction over Mr. Johnson's state tort claims.

### I.     Summary Judgment Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has

met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court may rely only on admissible evidence and must disregard inadmissible evidence. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016).

The court considers only those assertions in the parties' statements of facts that are properly supported by citations to admissible evidence. S.D. Ind. L.R. 56-1(e). The court has no duty to search or consider any portion of the record not specifically and properly cited in the parties' statements of facts. S.D. Ind. L.R. 56-1(h). To the extent Mr. Johnson has failed to rebut the defendants' assertions of undisputed facts, those facts are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing summary judgment must

2

file response brief with "a section titled 'Statement of Material Facts in Dispute' that identifies the potentially determinate facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment"); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (district court may apply local rules to deem facts unopposed on summary judgment).

## II. Undisputed Facts

Mr. Johnson was diagnosed with foot neuropathy several years before he arrived at Putnamville in November 2018. *See* dkt. 33-3 at 5, 12 (Johnson Dep. 16:19−17:5, 45:17−24). Before he was in custody at Putnamville, Mr. Johnson used prescription orthotic insoles to minimize pain related to this condition. *Id.* at 5 (Johnson Dep. 17:2−16).

When Mr. Johnson arrived at Putnamville, he notified medical staff that he wanted permission to have his prescription insoles sent into the prison. Dkt. 33-2 at 32 (medical records). But medical staff told him he could not have the insoles sent into the prison, and custody staff told him that doing so would be trafficking. *Id.*; *see* dkt. 33-3 at 8 (Johnson Dep. 28:4−10).

Mr. Schnarr was the health services administrator at Putnamville. Dkt. 33-1 at 1, ¶¶ 1−3. He worked for Wexford, which contracted to provide medical services to Indiana Department of Correction inmates. Mr. Schnarr is not a medical professional, and he had no authority to make treatment decisions for Mr. Johnson. *Id.* ¶ 4. At some point, Mr. Schnarr spotted Mr. Johnson outside the medical unit and asked, "what these insoles [were] all about." Dkt. 33-3 at 11 (Johnson Dep. 38:15−19). Mr. Johnson told Mr. Schnarr about

3

his need for custom insoles, and Mr. Schnarr ordered a pair of over-the-counter half-insoles. *Id.* (Johnson Dep. 39:9–12). But these non-custom insoles did not fix the problem. *Id.* at 17 (Johnson Dep. 62:19–22).

A few days after arriving at Putnamville, Mr. Johnson was seen by a nurse about his left foot pain. Dkt. 33-2 at 25. Mr. Johnson speculated that he had a bone spur on his left heel and told the nurse about his custom orthotic insoles. *Id.* The nurse ordered x-rays and directed Mr. Johnson to fill out a release of information form to help get records about his prior diagnoses and treatment. *Id.* at 27. Mr. Johnson received x-rays within a few days, but they showed no abnormality.

In May 2019, Mr. Johnson asked Mr. Schnarr for a wheelchair. Dkt. 33-2 at 22. Mr. Schnarr told him that only a doctor could order one for him and that he was scheduled to see a doctor the next week. *Id.* Mr. Johnson was in a wheelchair when he saw Dr. Perez the following week. Dkt. 33-3 at 15 (Johnson Dep. 56:4–10). Dr. Perez did not issue an order to continue the wheelchair. *Id.* (Johnson Dep. 56:8–12) ("I told him it was from the dorm. And he said, 'Okay. Good.' That was the only conversation we had about the wheelchair."). When the prison later took the wheelchair back, Dr. Perez took no action. *Id.* (Johnson Dep. 56:16–21) ("And then I went down [to] Dr. Perez a short time after that. He said, 'Oh, so you're a lot better now.' I said, 'Well, no, my feet still hurt, but they took the wheelchair from me.' And that was all that was said about that.").

In November 2019, Mr. Johnson submitted a healthcare request form regarding his foot pain. Dkt. 33-2 at 18. Dr. Perez saw him and recommended an evaluation by an outside podiatrist, but that consultation was "ATP'd."[1] *Id.* at 12−16; *see* dkt. 33-3 at 8 (Johnson Dep. 29:2−10) ("Dr. Perez said, 'I put it in that we need to take you to an outside provider. But they keep turning me down.' Well, I don't know who is his boss, or their boss or whatever. But I do know three different times that Dr. Perez said that there was nothing else that he could do.").

Meanwhile, Mr. Johnson got permission to have his custom insoles mailed into the prison. Dkt. 33-3 at 8−9 (Johnson Dep. 29:11−30:1). So he turned down the non-custom orthotics prescribed by medical staff. Dkt. 33-2 at 10.

Mr. Johnson started wearing his old orthotic inserts immediately. And while his pain improved, "his left foot [still] didn't feel right." Dkt. 33-3 at 9 (Johnson Dep. 30:2−7). When Mr. Johnson left the Indiana Department of Correction, he had new orthotics made, and that helped minimize his pain. *Id.*

### III.   Eighth Amendment Claims

Based on the undisputed facts, no reasonable jury could find that Mr. Schnarr or Wexford violated Mr. Johnson's Eighth Amendment rights, so the defendants are entitled to summary judgment on those claims.

---

[1] The defendants assert that "an alternative treatment plan was recommended by the Regional Medical Director, Dr. Mitcheff, for continued onsite care and management. Dr. Mitcheff instructed that Plaintiff should be educated on weight loss, as he was morbidly obese and weight loss would likely improve his symptoms." Dkt. 32 at 4, ¶ 15. But they cite no evidence for these assertions, and the Court will not search the record for it. Regardless, there is no evidence that Mr. Schnarr nixed the outside consultation.

### A. Mr. Schnarr

To prevail on his Eighth Amendment deliberate indifference claim, Mr. Johnson must show (1) that he suffered from an objectively serious medical condition and (2) that the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). "[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible . . .." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Instead, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.*

Mr. Johnson alleges that Mr. Schnarr was deliberately indifferent to his foot neuropathy when he (1) did not allow him to have his custom orthotic insoles sent into the prison and (2) did not send him for an outside consultation. But Mr. Johnson has designated no evidence showing that Mr. Schnarr was responsible for either of these decisions. The only designated portions of the record on this point do not shed any light on who initially made the decision that Mr. Johnson could not have his insoles sent into the prison, or who later allowed Mr. Johnson to have his custom insoles. *See* dkt. 33-2 at 32 (medical staff notifying Mr. Johnson that he could not have insoles sent into the prison); dkt. 33-3 at 8 (Johnson Dep. 28:4–10) (Mr. Johnson testifying that custody staff told him that having insoles sent from the outside would be considered trafficking). Likewise, Mr. Johnson has designated no evidence that Mr. Schnarr

6

overrode the doctor's referral to an outside podiatrist. Regardless, there is no indication that Mr. Schnarr made either decision.

Moreover, the designated evidence shows that Mr. Schnarr had no authority to make medical treatment decisions, dkt. 33-1 at 1, ¶ 4, and that he reasonably believed medical staff were providing Mr. Johnson with appropriate treatment. *See* dkt. 33-2 at 22 (Mr. Schnarr explaining to Mr. Johnson that only a doctor could provide him with a wheelchair); *Miranda v. Cty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018) (non-medical staff may reasonably rely on medical staff's treatment decisions unless they have "reason to know that [the] medical staff were failing to treat or inadequately treating [the inmate]").

Because Mr. Johnson has designated no evidence from which a reasonable jury could conclude that Mr. Schnarr was deliberately indifferent to his foot neuropathy, Mr. Schnarr is entitled to summary judgment on the Eighth Amendment claim against him. *See Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) ("For constitutional violations under § 1983 . . ., a government official is only liable for his or her own misconduct." (cleaned up)).

B.   **Wexford**

Wexford acted under color of state law by contracting to perform a government function—providing medical services to Indiana Department of Correction inmates. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). It can therefore be held liable for constitutional violations under 42 U.S.C. § 1983, but only if a corporate policy or custom caused the constitutional violation. *Glisson v. IDOC*, 849 F.3d 372, 379 (7th Cir. 2017); *see Monell v. New*

*York City Dep't of Soc. Servs.*, 436 U.S. 658, 691−94 (1978). And, like with other Eighth Amendment claims, Mr. Johnson must show that Wexford acted "with conscious disregard for the known or obvious risk" of a constitutional violation. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235−36 (7th Cir. 2021).

Mr. Johnson points to no evidence of any Wexford policy or practice—let alone one that caused him any constitutional injury. Wexford is therefore entitled to summary judgment on Mr. Johnson's Eighth Amendment claim.

### IV. State Tort Claims

With Mr. Johnson's federal claims resolved, the Court has discretion whether to relinquish jurisdiction over his state tort claims. 28 U.S.C. §1367(c). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The presumption is that a district court will relinquish supplemental jurisdiction over pendent claims "if all claims within the court's original jurisdiction have been resolved before trial." *Lavite v. Dunstan*, 932 F.3d 1020, 1034−35 (7th Cir. 2019). That presumption may be rebutted "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims

8

can be decided." *Sharp Elec. v. Metro. Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) (quotation marks omitted).

There is no reason to set aside the presumption in this case. The statute of limitations will not have run on Mr. Johnson's state tort claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1. The Court has not expended significant resources on the pending state tort claims, and the Court does not expect that the parties' efforts with respect to those claims in discovery and briefing will go to waste. And it is not absolutely clear based on the record before the Court how Mr. Johnson's state tort claims must be decided. Accordingly, this Court relinquishes supplemental jurisdiction over Mr. Johnson's state tort claims.

## V. Motion to Strike and Substitute

The defendants' motion to strike and substitute, which seeks to correct errors in their motion for summary judgment and supporting brief, dkt. [36], is **DENIED** as unnecessary.

## VI. Conclusion

The defendants' motion to strike and substitute, dkt. [36], is **DENIED**. The defendants' motion for summary judgment, dkt. [31], is **GRANTED** as to Mr. Johnson's Eighth Amendment claims. The Court relinquishes supplemental jurisdiction over Mr. Johnson's state tort claims. Final judgment shall now enter.

**SO ORDERED.**

Date: 2/9/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ROBERT JOHNSON
158028
205 S. Mulberry St #2
Corydon, IN 47112

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Sarah Jean Shores-Scisney
KATZ  KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com